*Court Of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*

# MEMORANDUM OPINION

No. 04-08-00854-CV

## IN THE MATTER OF C.E.F.W.

From the 386th Judicial District Court, Bexar County, Texas
Trial Court No. 2004-JUV-02056
Honorable Laura Parker, Judge Presiding

Opinion by:    Phylis J. Speedlin, Justice

Sitting:    Catherine Stone, Chief Justice
            Phylis J. Speedlin, Justice
            Steven C. Hilbig, Justice

Delivered and Filed:  September 2, 2009

AFFIRMED

C.E.F.W., a juvenile, appeals the trial court's order transferring him from the Texas Youth Commission (TYC) to the Institutional Division of the Texas Department of Criminal Justice (TDCJ) to serve the remainder of his forty-year determinate sentence.  In his sole issue, C.E.F.W. contends the trial court abused its discretion in ordering the transfer.  We affirm the order of the trial court.

### BACKGROUND

At the age of thirteen, C.E.F.W. was charged with two counts of aggravated sexual assault for the brutal beating and rape of a 62 year-old woman in an assisted living facility.  The case was

tried to a jury, who found that C.E.F.W. engaged in delinquent conduct and recommended that he be committed to TYC for a determinate sentence of forty years. The trial court adjudicated C.E.F.W. delinquent and ordered him committed to TYC for a determinate sentence of 40 years, with possible transfer to TDCJ. The trial court subsequently conducted a hearing based on TYC's request that C.E.F.W. be transferred from TYC to TDCJ. At the hearing, TYC court liaison Leonard Cucolo recommended that C.E.F.W. be transferred to TDCJ to complete the remainder of his 40-year sentence. Cucolo testified that while C.E.F.W. was classified as a priority I sex offender, he failed to enter the sex offender treatment program because his aggressive and disruptive behaviors prevented him from qualifying for specialized treatment. During C.E.F.W.'s time at TYC, he had 331 documented incidents, 40 of which were in the more serious category I. While there were periods during which C.E.F.W. was able to control his behavior, Cucolo testified that it was when significant attempts were made to get C.E.F.W. to engage in treatment that his behavior became especially disruptive. Cucolo also noted that C.E.F.W. was aware of the consequences of his refusal to adjust his behavior and participate in his treatment program, including the possibility of transfer. Further, C.E.F.W. often refused to attend individual and group therapy sessions, which prevented him from progressing in correctional therapy. Finally, Cucolo testified that if C.E.F.W were to be returned to TYC, he would be returned to the Giddings State School, where he would participate in basically the same treatment he had already been offered.

TYC psychologist Dr. Bradley Norlander also testified at the transfer hearing. He stated that although the TYC Special Services Committee initially recommended that C.E.F.W. be transferred to TDCJ, he recommended that C.E.F.W. be given a second chance. TYC then assigned C.E.F.W. a new case manager, moved him into a new dorm, and adjusted his medication. However, C.E.F.W.

failed to make sufficient progress in his treatment and continued to have serious behavior problems, including gang-related incidents and dangerous behavior toward others. He often slept in class and required frequent interventions from staff in attempts to persuade him to do his work. Further, C.E.F.W. refused to talk about personal issues or participate in therapy, including both group and individual therapy, preventing him from making progress in the correctional therapy program. Dr. Norlander subsequently re-evaluated C.E.F.W. and recommended that he be transferred to TDCJ.

Dr. Nicholas Carrasco, a private-practice psychologist who evaluated C.E.F.W. and did contract work for TYC, testified on C.E.F.W.'s behalf. Dr. Carrasco stated that TYC's failure to treat C.E.F.W. for his anger issues is what prevented C.E.F.W. from qualifying for the sex offender treatment program. Dr. Carrasco further opined that C.E.F.W. is at high risk to assault someone in the near future. He stated the chances of C.E.F.W. getting the treatment he needed in TDCJ were slim given that there are 30,000 sex offenders in the State prison and 600 slots for treatment. Without such treatment, Dr. Carrasco believed C.E.F.W. posed a high risk to the community upon his eventual release from prison. Dr. Carrasco recommended that the trial court deny the request to transfer C.E.F.W. to the adult prison system.

At the conclusion of the hearing, the trial court ordered that C.E.F.W. be transferred to TDCJ to complete the remainder of his 40-year sentence. On appeal, C.E.F.W. argues that the trial court abused its discretion in transferring him from TYC to TDCJ because the resources available in TYC to rehabilitate him are not available in TDCJ, and should he be transferred to TDCJ without proper rehabilitation, he will be a risk to society upon his eventual release.

**DISCUSSION**

We review a trial court's decision to transfer a juvenile from TYC to TDCJ under an abuse of discretion standard. *In re J.M.O.*, 980 S.W.2d 811, 812-13 (Tex. App.—San Antonio 1998, pet. denied). The appellate court must review the "entire record to determine if the trial court acted without reference to any guiding rules and in an arbitrary manner." *Id.* at 813. As long as "some evidence exists to support the trial court's decision," there is no abuse of discretion. *Id.*; *In re R.G.*, 994 S.W.2d 309, 312 (Tex. App.—Houston [1st Dist.] 1999, pet. denied). The appellate court may not reverse the trial court's decision for abuse of discretion simply because it disagrees with the decision. *In re R.G.,* 994 S.W.2d at 312.

In determining whether a juvenile should be transferred from TYC to TDCJ, the trial court may consider the following factors:

> the experiences and character of the person before and after commitment to the youth commission, the nature of the penal offense the person was found to have committed and the manner in which the offense was committed, the abilities of the person to contribute to society, the protection of the victim of the offense or any member of the victim's family, the recommendations of the youth commission and prosecuting attorney, the best interests of the person, and any other factor relevant to the issue to be decided.

TEX. FAM. CODE ANN. § 54.11(k) (Vernon 2008). The trial court need not consider every factor, and evidence of each factor is not required. *In re J.L.C.*, 160 S.W.3d 312, 313-14 (Tex. App.—Dallas 2005, no pet.); *In re R.G.,* 994 S.W.2d at 312. Additionally, the trial court may assign different weights to the factors that it considers, and it may consider other relevant factors not listed in the statute. *In re J.L.C.*, 160 S.W.3d at 314; *In re R.G.,* 994 S.W.2d at 312. As long as the trial court's decision in consideration of these factors is within its discretionary authority, there is no abuse of discretion. *In re R.G.*, 994 S.W.2d at 312.

C.E.F.W. contends that the trial court abused its discretion in failing to consider one of the explicit factors listed in section 54.11(k): "the abilities of the person to contribute to society." TEX. FAM. CODE ANN. § 54.11(k). He argues that by implication this factor includes the risk the person poses to society upon his release. C.E.F.W. maintains that the reason he was unable to reach threshold levels in academics, behavior, and correctional therapy is because TYC never properly addressed his issues with anger through an anger management program. He contends that his inability to control his anger greatly contributed to his behavior problems, which prevented him from progressing in the resocialization program, which in turn prevented him from entering the sex offender treatment program. He further contends that without this specialized treatment, he will be a danger to society upon his release. Thus, C.E.F.W. argues that he should have been remanded back to TYC for proper anger management therapy, so that he may achieve threshold levels for entering sex offender treatment.

We disagree with C.E.F.W.'s contention that because he would benefit from more rehabilitative treatment, the trial court should have denied the transfer request. Under section 54.11, the trial court has no duty to ascertain that TYC has adequately attempted to rehabilitate the juvenile, but only determines whether to transfer the juvenile to TDCJ, release him under supervision, discharge him, or recommit him to TYC. TEX. FAM. CODE ANN. § 54.11 (Vernon 2008); *In re J.R.W.*, 879 S.W.2d 254, 258 (Tex. App.—Dallas 1994, no writ). Based on this record, we cannot conclude the trial court abused its discretion in ordering that C.E.F.W. be transferred to TDCJ. The underlying offense for which C.E.F.W. was adjudicated delinquent was particularly egregious and extremely violent. C.E.F.W. also had a prior juvenile record of offenses, including misdemeanor assault and contempt of court cases. Additionally, the record indicates that C.E.F.W. continued a

pattern of disruptive and aggressive behavior while at TYC, despite TYC's efforts to assist him in controlling and adjusting his behavior. Testimony at the transfer hearing indicates that C.E.F.W. was informed that transfer to TDCJ was a consequence of continuing his disruptive behavior, and he was even given a second chance to respond to treatment programs before a transfer request was made by TYC. C.E.F.W. made no additional progress after being given this second chance, and the evidence indicates that were he to be returned to TYC, his treatment program would not substantially change.

After reviewing the record in light of the factors set forth in section 54.11(k) of the Family Code, there is clearly some evidence to support the transfer. *See In re R.G.,* 994 S.W.2d at 312-13. The trial court stated that its decision was based primarily on "the serious and egregious nature of his committing offense and the fact that he has failed to follow the rules at TYC while knowing what the consequences were . . . and that he has failed to engage in treatment having been offered the opportunity numerous times." There is ample evidence in the record to support this reasoning. Therefore, the trial court did not abuse its discretion in ordering that C.E.F.W. be transferred to TDCJ for the remainder of his sentence. *See In re J.M.O.,* 980 S.W.2d at 813. C.E.F.W.'s sole issue on appeal is overruled, and the order of the trial court is affirmed.

Phylis J. Speedlin, Justice